ST. LOUIS RAILWAY SUPPLIES MANUFACTURING COMPANY, Respondent, *v*. THOMAS HARBINE, Appellant. ST. LOUIS RAILWAY SUPPLIES MANUFACTURING COMPANY, Respondent, *v*. RICHARD E. TURNER, Appellant.

### April 25, 1876.

1. From July 4, 1865, to November 1, 1870, no corporation could be created in Missouri, the stockholders of which were not liable for the debts of the corporation so far as those debts did not exceed the full par value of the stock by them respectively held.

2. The constitutional amendment adopted in November, 1870, did not have the effect of impairing an obligation incurred by a stockholder prior to that date.

APPEAL from St. Louis Circuit Court.

*Affirmed*.

*Jas. O. Broadhead* and *Broadhead & Overall*, for appellant, cited: Wag. Stat. 293, 875; Kritzer *v*. Woodson, 19 Mo. 327; Ochiltree *v*. Iowa R. R. Const. Co., 54 Mo. 117; St. Jo. & Denver City R. R. Co. *v*. Buchanan County Court, 39 Mo. 489; Hawthorne *v*. Baliff, 2 Wall. 10.

*Chandler & Young*, for respondent, cited: Ochiltree *v*. Iowa Const. R. R. Co., 21 Wall. 249; Hawthorne *v*. Balef, 2 Wall. 10; Provident Savings Institution *v*. Jackson S. Rink, 52 Mo. 552; State Savings Institution *v*. Kellogg, 52 Mo. 583; Franciscus' Case, 43 Mo. 463; Corning *v*. McCullough, 1 Comst. 56; Wag. Stat. (1872) 291, sec. 13.

GANTT, P. J., delivered the opinion of the court.

These two cases may be considered together.

The petition in the first showed that the St. Louis and St. Joseph Railroad Company was a corporation created and organized under the laws of Missouri, in 1868, for the construction of a railroad between St. Louis and St. Joseph; that plaintiff sold and delivered to it, during the year ending September, 1870, goods, wares, and merchandise to the amount of $6,624.26, which the railroad company never

paid; that on September 29, 1870, the railroad company was dissolved, and was adjudged a bankrupt on December 24, 1870; that plaintiff presented its claim against the assignee in bankruptcy, and received a small dividend, leaving a balance unpaid, including interest, of $7,010.62; that at the time the goods were so sold and delivered the defendant was stockholder, having $5,000 of the stock of the railroad company, and so continued up to the dissolution of the corporation, and plaintiff thereupon asked judgment against Harbine for $5,000, pursuant to the Constitution and laws of Missouri.

The defendant, after a formal denial of the indebtedness of the railroad company to the plaintiff, alleged that plaintiff had instituted suit against R. E. Turner, who was also a stockholder of the railroad company, to the amount of $5,000, for the same cause of action, and had got judgment against Turner for $5,000.

At the trial the court found the issue joined in favor of the plaintiff, and gave judgment against Harbine for $2,381, the balance of its claim over and above the judgment against Turner, and refused an instruction, asked by defendant, that defendant is not liable to the plaintiff in this action if it appears that he has fully paid for his stock to the railroad company.

In the case of Turner the facts are the same, *mutatis mutandis*. The point urged by appellant in each case is that the liability of the defendants, as it stood when the goods, wares, and merchandise were furnished to the railroad company prior to September, 1870, was in the nature of a penalty, and was discharged by the change of the Constitution and the repeal of the laws creating and enforcing the penalty before the commencement of these actions.

The actions were commenced on August 18, 1874, and October 23, 1874, respectively.

The respondents, on the other hand, contend that the stockholder was bound by a contract to answer to the

creditors of the corporation to the amount of his stock, and that the obligation of this contract was not liable to be discharged or impaired by any act of the State of Missouri, organic or otherwise.

1. We are of opinion that the defendant in each case is liable to the creditors of the corporation at least to the amount of his stock, notwithstanding that it has been fully paid for.

The 6th section of the 8th Article of the Constitution of Missouri, adopted in 1865, and in force until November, 1870, was in the following words : "Dues from private corporations shall be secured by such means as may be prescribed by law ; but in all cases each stockholder shall be individually liable, over and above the stock by him or her owned, and any amount unpaid thereon, in a further sum at least equal in amount to such stock." Of course, before the adoption of this constitutional provision, it was competent for the General Assembly, in every special charter granted, to declare that the rights of the creditors of the corporation should be still more effectually guarded than they were from 1865 to 1870. What was novel and peculiar about the provision of the Constitution of 1865 was the insertion of this protection to creditors in the Constitution. So long as it remained there, no corporation could be created after July 4, 1865, the stockholders of which were not in the position of limited partners ; that is to say, they were liable, necessarily, to pay the debts of their association, *at least* as far as these debts did not exceed the full par value of the stock by them respectively held ; and, if such stock had not been paid for in full, the stockholder was further liable to the amount of anything unpaid on his stock subscription. But this was the inferior limit of the liability of the stockholder. The General Assembly had full power by statute to declare that each stockholder should be liable, *in solido*, for the debts of the corporation, in the same manner that each member of a firm is liable for

all the obligations of the partnership. In former years, the General Assembly had made some steps in this direction, but the increased liability of the stockholder had generally been treated as a penalty for the neglect of some duty, and not as a matter accruing from the contract of indebtedness. In the act of 1845, chapter 34, it was by the 13th section provided that, unless exempted by their charters, the stockholders of all corporations thereafter created should be liable to have their individual property taken on execution to satisfy the debts of the company, in case of a deficiency of corporate assets, to the amount of their stock, *and no more*. By section 18 of the same chapter, the duty was enjoined on every corporation thereafter created to publish, annually, a statement of its debts; and a failure to do this made all the stockholders liable, *in solido*, for the debts of the corporation. By section 19 the payment of any unearned dividend made the directors liable in like manner; and by section 20 the incurring of debts in excess of the capital stock actually paid in involved similar consequences. These provisions were reënacted in the Rev. Code 1855, ch. 34, secs. 13, 18, 19, and 20.

It will be seen that sections 18, 19, and 20 are in terms of a penal nature. They inflict punishments for neglect of duty on the parties guilty of that neglect. By section 18 the duty of making publication of its debts is laid on the corporation at large. It was to be performed by a meeting of the stockholders; and, for a failure to perform it, the stockholders were declared punishable. By section 19 the paying of any unearned dividend, leading to the insolvency of the company, which would be done, if at all, by the directory or administrators of the company, was declared to entail a penalty on the directors under whose management it occurred; and by section 20 the incurring of any debt in excess of the paid-up stock was punished in the same manner. In *Kritzer* v. *Woodson*, 19 Mo. 327; *Cable* v. *McCune*, 26 Mo. 371, and *Cable* v. *Gaty*, 34 Mo. 573,

the penal character of these several sections is recognized; and in each case the decision turned upon this character.

The 13th section of the acts of 1845 and 1855 has never been supposed to be penal in its nature. It is remedial rather. But it is carefully confined to a single case, and it makes what is the inferior limit of the stockholder's liability in the Constitution of 1865 the largest measure of the recourse of the creditor against him. In language which we think imports nothing but the liability of a contractor for a debt incurred by himself or his lawfully appointed agent, the Constitution of 1865 proclaims that to this extent, *at least*, all stockholders of all corporations thereafter created shall be liable. The mode of enforcing this liability was committed to the General Assembly. That body, at the first session held after the adoption of this Constitution, declared (sec. 20 of ch. 62, p. 330, of Gen. Stat. of Mo.) : " If any company formed under this act dissolve, leaving debts unpaid, suits may be brought against any person or persons who were stockholders at the time of such dissolution, without joining the company in such suit ; and if judgment be rendered and execution satisfied, the defendant or defendants may sue," etc. The rest of the section refers only to the manner of compelling contribution after one stockholder has paid in this manner a debt of the corporation, and need not be quoted here.

Now, as long as there was no such prohibition as is contained in the constitutional amendment adopted in 1870, the General Assembly was perfectly competent to pass such a statute as this, and any one gaining a right of action under it could not be deprived of this right by any instrumentality of the State of Missouri, unless this right of action were in the nature of a penalty merely. We are of opinion that it was not of such a nature. We think it plainly appears, by the petition, that the defendants were stockholders both when the debt was contracted and when the corporation was dissolved, and so were within the scope both of the Consti-

tution and the statute of 1865 ; that by reason thereof the plaintiff had a clear right of action against the defendants ; that in enforcing this right the Circuit Court has kept within the measure of the remedy given by the statute ; that this liability of the defendants was not a matter arising *ex delicto*, but *ex contractu;* that it grew out of the relations established by the law between the creditor and the stockholders of a corporation ; and that the latter were as much bound, and in the same manner, by the contract entered into between the creditor and the authorized agents of the corporation as would be the members of a commercial firm for debts contracted by their agent with the creditors of the partnership.    The rights thus existing were beyond the reach of the repeal of the 6th section of article 8 of the Constitution of 1865.    *Hawthorne* v. *Balef*, 2 Wall. 10. For the purpose of protecting the rights of the creditors, that statute and that section of the Constitution of 1865 must be regarded as still in force.

We therefore affirm the judgment of the Circuit Court in both cases, all the judges concurring.